Okay, good afternoon everyone. We have two cases here this afternoon. We'll get started with the first one. First case, which is Geisinger Community Medical Center v. Secretary of HHS. Mr. Glaser? Yes, Your Honor. May it please the Court, Joseph Glaser on behalf of Geisinger Community Medical Center. I request that three minutes be reserved. May that request be granted. Thank you, Your Honor. Medicare law, as written down by the courts, is often a very complex area. We know. The good news is that I don't think we have to wade deeply into that thicket for this case. There are some deep issues that we have to consider, and we see this as an issue of the separation of powers, an issue where Congress has been clear in the directive to the agency, and the agency doesn't like the directive and has decided to go into a different direction. In terms of the direction, and with all these cases the direction is clear from the courts in Chevron and from this court, let's focus on the language of the statute first. And in that language we have the word shall, and we have the language for purposes of this subsection. The secretary shall treat a Section 401 hospital for purposes of this subsection as though it were located in the rural area. So effectively, you treat the hospital, you essentially treat it as though it's moved from its current area into a rural area, and treat it the same as those hospitals that are located in those rural areas. The dispute seems to be over what Congress meant by for purposes of this subsection. From our standpoint, it's clear. It meant for purposes of this subsection. If the statutory scheme is so clear as you claim, such a model of clarity, how come it took you 15 years to file a lawsuit challenging the board's reclassification rule? Why is it such a model that's so clear? It's an interesting question, Your Honor. Each year this issue essentially potentially comes up anew for a hospital. Each year the hospitals get their wage index, and then they evaluate opportunities where they might be able to reclassify to one area or another. So it's not as though this necessarily existed 15 years ago for Geisinger. I truly don't know the answer to whether it did. I don't believe it did. I can tell you that Geisinger moved as soon as it was aware of the issue. Now, when we're talking about the Geisinger Medical Center, it's a sprawling hospital system, is it not? It is. Where is it physically located? It is in the Scranton area. That's a big area. Where is it? It is in Scranton. It's in Scranton. Okay. It has other facilities within the medical system, does it not? Correct. Okay. Are we talking only about the Scranton facility? We're talking about just this particular facility. Just this facility, not any other aspects of the medical system itself? Correct. Okay. So it's just this facility. What happens is each hospital, you can operate under one of two different ways. If you have multiple physical settings, you can operate under one provider number, whereas Geisinger does operate under multiple provider numbers. Okay. So just this facility. So the answer to your question, Your Honor, is Geisinger didn't know it had the issue. As soon as it became aware of it, it attempted to move forward and did everything it could to protect its life. Well, why should we conclude that Section 401 did not really address the intersection between under 401 classification of wards, subsection D10? Well, as Your Honor, and I know this is answering questions I'm asking them, so it's a bit rhetorical, but if Congress can't use a language such as for purposes of this subsection, when it amends a very large chunk of our statutory law, how can Congress do that? As replicated in the appendix, and it's smaller type and I apologize for that, it's many more pages when you look it up in the code, it took up 40 pages or so in the appendix subsection D. And the question is if Congress can't look at that large chunk of material and say, we want this change to apply to all of that and use that appropriate language, which it did for purposes of this entire subsection, then how can Congress specifically go in and amend each particular portion? It simply can't govern. Do you agree that the case ultimately requires us to consider the actual effect of Section 401 on the board's reclassification process? Yes. All right. Okay. And don't you agree that the D10 itself grants the Secretary a great deal of discretion in establishing guidelines governing the board? Sure. That provision which was enacted before Section 401 did in fact grant some discretion. Some discretion? I'm saying a lot of discretion. I agree with that, Your Honor. All right. And doesn't that make sense? I mean, a lot of this stuff has to sort of be worked out. And, I mean, Congress can't. This is quite a scheme. And that's your adversary's argument, isn't it, that Congress threw a lot on their plate to work out the details. Why isn't their argument correct? Well, I think their argument was perhaps correct up until Section 401 came along vis-à-vis the application of it to the MGCOB process. Congress came along and said, yes, we've established this statutory framework and we allow you certain discretion to operate within that regulatory framework. And, in fact, that applies to not just the agency here, but any agency generally has relatively broad discretion within its area. Having said that, Congress then stepped in and said, we have a specific provision that we're enacting that we want you to apply. Not only do we want you to, we're telling you you shall apply in this particular way. So, yes, there was discretion, and there is still some discretion. But that discretion is limited by Section 401. Come on. I'm scratching my head over the one section, well, I'm sure a lot of the sections, but the section that you point to about shall treat the hospital as being in a rural area, that's D8E, it has a section in Portion 2.4. It says the hospital meets such other criteria as the secretary may specify. Okay? Yes. Does that affect the analysis at all? It doesn't, but I think it's relevant that the secretary hasn't specified. It does affect the analysis in this sense. Congress knows how to grant discretion when it wants to, and Your Honor is right. Initially, Congress did grant a significant amount of discretion, and in many areas that discretion on the board process still applies. Congress also knows how to stop an agency, hopefully, or at least to try to stop an agency from exercising discretion. If you look at this statute, there are two areas where it grants discretion, and Your Honor has pointed out one. The secretary has chosen not to enact any other measure. Now, what that means is that we're still left with the first three. If a hospital meets any one of those first three, it qualifies as a Section 401 hospital. That fourth provision simply says if the secretary wants to allow other hospitals to do so, she may enact on some provisions that allow them to as well. So we have that section that is discretionary. We have above another section that specifically references discretion, and that's in terms of the form of the application for a Section 401 hospital. Now, you're arguing essentially that Section 401 is unambiguous, and the statutory language is clear, and that 401 makes everything in subsection D applicable to a hospital who seeks 401 rural designation. That's essentially what you're arguing. If it's so clear, why should we be looking at legislative history? Legislative history is controversial, Your Honor. I understand that, and I know this Court has leaned against considering it. Well, we have presented to say it's not to be used in statutory interpretation. Not leaned against. It's said it's not to be used. Yes and no. Judge Fischer, after that, was made quite clear in Vicer. Yes, sir. In a 2010 case in any of the Philadelphia newspapers, then did, in fact, use legislative history for a rather unique aspect of the Step 1 analysis. And it wasn't quite the absurdity doctrine that I referenced in my papers, but it was kind of close. It was a situation where it was a bankruptcy case, and the debtor contended that it could make all qualifying bidders not come up with a cash offer. Well, that's the Philadelphia newspaper case. Correct. Not to come up with a cash offer. And creditors wanted to use some of their… Right. But what about Geiser? Well, Geiser, I think, well, let me first deal with Philadelphia, and then I'll go back. So Philadelphia, which came after Geiser, did tell us that there at least is one situation where the Court considers legislative history relevant, even though the statute itself was deemed unambiguous and clear. Geiser, I think Geiser went a step further than it needed to. I think that legislative history at Step 1 is most logical at the two extremes. One would be Philadelphia, where you're looking at it to say, we've looked at the statute, we think it's clear as a bell, but let's look at legislative history just to make sure that there's not something so clearly contrary or something that would render the statute absurd for us to bid. I like Santiago, quite frankly, a little bit better than I like Geiser, and Geiser referenced Santiago and noted that it was really done almost as a cherry on top. And Geiser came after Santiago. But I think Geiser took a little further than it needed to. I think Geiser, had Geiser recognized, much like on the other side with Philadelphia newspapers, that yes, we look at the statute, yes, we look for clarity, but yes, we can look at legislative intent to see if there's sufficient clarity there. But you don't need it. If your argument is flawed, you don't need it. Why get into this murky area to try to bootstrap yourself at Chevron Step 1? It's just a hedge. Yeah, I don't know if it's a hedge. I think there's lack of clarity, and we're probably going to get clarity in about a month or two from the Supreme Court when it issues its ACA decision. It gives us a little bit more clarity on some of the legislative history. Okay. Don't you agree that most of the relevant substantive changes governing the board reclassification are found in the Code of Federal Regulations and not subsection D? I do. The Code of Federal Regulations, which was enacted pursuant to the authority in subsection D. Right. Why should we follow the Connecticut court and say that if Congress intended Section 401 of D10 to require the board to accept reclassification applications of 401 hospitals, it would have said so in so many words. I think it's a difficult thing to require Congress when it wants to amend a provision of statute that has so many different paragraphs, subparagraphs, and the like, to require Congress to pick out the one or two that it really needs. Essentially what the Secretary is asking us to do here is to say, you know what? Yes, we mean everything. Congress will enact legislation that says, yes, we mean everything, but we really want to highlight this one and say, yes, this one. And my argument would be there's a real danger for Congress doing that because we likely would be standing here where the agency would be saying, well, they said it at once and they didn't mean the other. Congress meant all of them. NGCR would mean everything else, so it said so. Well, you acknowledge that the statute is at the very least ambiguous. If it is ambiguous, why should it go into the Chevron formula? I don't acknowledge that the statute is ambiguous. Well, you just said it doesn't say one way or the other. No, no, it doesn't say NGCRB, Your Honor, because it didn't have to. When Congress wants to amend an entire section, it says amend the entire section. It doesn't pick each particular subparagraph and say, we mean this one, we mean this one, we mean this one. So I don't believe there's ambiguity at all. The Secretary believes that when Congress said for purposes of this subsection, it apparently meant all but one, the NGCRB process. And I don't know how that's logical. When Congress uses the words, we're supposed to give it meaning. That's a clear direction from the Supreme Court. Mr. Boyd, if you get to a Chevron step two, can you prevail? Absolutely. Obviously, everybody prefers not to get there on my side. I get that. Having said that, Chevron step two is not a license for an agency to do anything it wants. Yes, the courts give it a deference. Yes, the courts consider it if it's a permissible construction. But we also have language in Chevron that I think is relevant here and should be focused on. Unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. And I think that's important. The Secretary herself believes that this legislative history is very important. The only problem is she believes it's important up until that last sentence. But she herself believes it's important. So if we're to say now that it shouldn't be considered at step two, our argument is if we get to step two and the Secretary believes it's important, then it all should have been considered. Well, we may agree with you. We may agree with you on that. And maybe if we were making the choice, we wouldn't have been afraid that the statute knows terms. But our obligation is if it's a reasonable interpretation of the statute and ambiguous as it is, we are not at liberty to say it should have been better or different. Are we? The answer is I go back to that language that I quoted from Chevron. The answer is if it's contrary to the legislative history, then the answer is yes. Well, if the language is somewhat befuddled or unreasonable, can we conclude that the board has made a reasonable interpretation, perhaps not the one we would have made, but one that is not unreasonable? I don't think it can hear you, Your Honor, and I think the answer is, again, when you have legislative history that is so contrary to it and it's legislative history that the agency agrees is critical, and yet we're missing that last sentence that is completely opposite. The agency hasn't done our job. Your bottom line, as far as I'm reading it, is that there is no question that once they said it's a rural hospital, it's rural, it should be considered rural for all purposes. Correct, including the MGCRB process. There's no ambiguity, there's no uncertainty in this whatsoever. It said for all purposes under subsection D, which includes the MGCRB application process, yes. You argued the case in Connecticut also? Correct, Your Honor. Has the Second Circuit heard arguments? It happens on a much more delayed briefing schedule. The government's briefing is due in the first part of June, so I wouldn't expect a decision for something like that. All right, we'll have you back on rebuttal. Thank you. Thank you, Mr. Blair. Ms. Morrisey? May it please the Court, Tara Morrisey for Appalese. The Medicare statute does not compel the result Geisinger seeks here. Geisinger desires the wage index for Allentown hospitals, but as an urban hospital located in Scranton, it does not satisfy the criteria. Geisinger is located 27 miles away, and Allentown is not the closest or even the next closest urban area. To get to Allentown, Geisinger asks Where would be the next closest? The next closest is East Stroudsburg. East Stroudsburg. And the next closest after that is Newark, New Jersey. Yeah, okay. So to get to Allentown, Geisinger asks this Court to endorse a strategy that the Secretary has prohibited. It wants to gain Section 401 status to become rural, and then turn around and use that rural status to seek board reclassification. Well, it seems to me that at least as it relates to your argument, is that Congress may have left you with a loophole. And that's a word that's a little bit different than clarity and ambiguity and unambiguous, but a loophole. And if in fact there is that loophole that would allow Geisinger to essentially hopscotch from Scranton to rural to urban in Allentown, isn't your complaint to go back to Congress and say, hey, did you really intend this? Because here, at least in Scranton, Pennsylvania, a hospital is able to hopscotch over rural status and get to another urban status. Judge Fischer, we would disagree that Congress left a loophole. We think that the statute is ambiguous, and as to the relationship between So you just call it something different. You want to call it ambiguous. Well, there's an ambiguity, and Geisinger is attempting to create a loophole. Are all loopholes ambiguities? I'm sorry. Do you agree that Section 401 applies for purposes of subsection D? Yes, Your Honor. All right. If you do agree that D encompasses D-4, the statute of provision establishes a board outlying procedure, right? In D-10, yes. If 401 applies for purposes of subsection D, 401 necessarily applies to subsection D-10, then, doesn't it? Judge Cohn, I think we need to look to statutory context when we're determining what Ms. Morrissey, I'm speaking softly, but maybe if that microphone is down a little bit, it's going to be closer. Yeah, I think that might work a little better. Try that. Thank you. We need to look to statutory context to determine exactly what it means to apply this mandate in Section 401 for purposes of subsection D with respect to each provision. Subsection D is 13 paragraphs and spans 18 pages of the U.S. Code. We are not arguing that it applies to all of subsection D except for paragraph 10, but rather that we need to look at each paragraph, paragraph by paragraph, to determine whether and how it applies. And here, when we look to subsection 10- Yeah, but what does it say in 401 that you do that? I'm sorry? Where does it say in Section 401 that you look paragraph by paragraph? Congress could have done that and said it only applies to paragraph 1, 2, 5, 8, 16, 25, but it didn't do that. It did not say that, but there are certain paragraphs of subsection D to which Section 401 could simply have no application. For example, paragraph 6 deals with the timing for the publication of final rates, and paragraph 7 deals with various judicial review provisions. Okay. So it's not the case that it applies reflexively to each paragraph. What is your response to Geisinger's claim that your defense of the Board's reclassification rule rests on the notion that 401 does not mean what it says? Because it says it can do what it did. It says that you treat hospitals as rural for purposes of subsection D, and then when we look to the paragraph 10, paragraph 10 has another important textual provision that I believe Judge Cowen, you touched on, that expressly delegates authority to the Secretary to promulgate guidelines for Board reclassification. This is exactly such a rule. Let's stay on subsection. Let's stay on 10. Okay. Let's focus on 10, because this is the language that HHS is essentially hanging your hat on. This is really the crux of your argument. You say that this gives you the right to adopt the reclassification rule that you've adopted. First of all, it talks about publishing guidelines. Correct. Guidelines are not regulations, are they? I think that's how our set of regulations governing Board reclassification. Can guidelines limit the scope of Section 401? No, Your Honor. Right. I didn't think. And it goes further to say to be utilized, guidelines to be utilized by the Board  Now, it seems to me that that's a rather narrow grant of authority to the Department. Your Honor, courts have interpreted this as broad authority, and the Secretary in promulgating these rules referred to it as a limitation on Board reclassification. And so this is a guideline that the Board uses when rendering decisions on applications. It simply says if you're a Section 401 hospital, you cannot use your rural status to proceed through our reclassification mechanism. But doesn't your argument by necessity say that 401 hospitals don't get full advantage of subsection D? No, Your Honor. Section 401 hospitals get what they bargain for. They get rural status, and they have the ability to get all the benefits that come with it, especially becoming a rural referral center or becoming potentially eligible for sole community hospital status. Did you really think you answered my question? I mean, it was artful in how you provided it, but I'm not sure that you answered my question. I think your question, Judge Fischer, is whether they should also be able to go through Board reclassification as a rural hospital. Yeah, I just said. My answer is no, because that does. When the Secretary shall treat the hospital, I'm quoting, the Secretary shall treat the hospital as being located in the rural area. Yes. Does that mean that the Secretary then must treat it as it's in the rural area? It doesn't say partially. It doesn't say only for a certain purpose. It says shall treat it as a rural hospital. Yes, Judge Cowan, and to also answer Judge Fischer's question, that means that it gets a rural wage index. What Geisinger is asking here is not necessarily the best application of that mandate in Section 401. It's seeking to proceed to be treated as a rural hospital by having the Secretary allow it to proceed through a mechanism that turns it into an urban hospital for wage index purposes. Sounds a little bit like a loophole, doesn't it? You're saying, and therefore as eligible for any of the other benefits that rural hospitals would have. But you're saying it doesn't mean it's eligible for any other benefits that rural hospitals have. It's not eligible for Board reclassification. It's sort of at odds with the language, it shall treat it as a rural hospital. There's nothing there that says except for certain purposes. I think it would also be a reasonable interpretation, Judge Cowan, to say that exactly the opposite, that treating a hospital as rural means giving it a rural wage index, not shepherding it through the process to give it an urban wage index. Can I ask you a related question? Geisinger characterizes your argument as agreeing that Section 401 hospitals must be treated as rural for all purposes under Section D, other than the review board. Is that the sole exception? No, Judge Segarra, so far as there are several other paragraphs in that section. Can you tell us what the other exceptions would be? What we're looking at here is shall treat. You're saying you carve out the review board as one exception. Are there others? There are paragraphs to which Section 401 would have no application, like Paragraph 6 about the timing for publication of final rates and Paragraph 7 for judicial review. So there are other provisions to which there's just no application. Are you against looking at House conference reports? Is that extra legislative history or is it not? We consider that legislative history, yes. So is that allowed here or not? Because the conference report clearly indicates that Congress actually spoke to the intersection of the board's reclassification and Section 401 and spoke negatively. At least at Step 1, Your Honor, I think this Court's decision and Geiser defined to look at legislative history at that step. But even if we were to look at it, it does not warrant dispositive weight here, especially at Chevron Step 1. We use traditional tools of statutory interpretation to determine whether Congress unambiguously addressed the question. And whereas here other statutory tools of interpretation are all pointing in the opposite direction, legislative history does not warrant dispositive weight. That's especially true when we have a separate statutory provision that grants discretion to the Secretary to promulgate this exact sort of rule. But your argument is based upon the fact that this is somewhat ambiguous. Therefore, we should let the board operate as it has. And if it's ambiguous, we'll allow them to look into statutory history. And when we look into the legislative history, it sheds light on whether Congress has actually spoken to the specific issue here. And it has spoken. It appears it has. It has spoken against your interest. In the Step 2 world, yes, we can look at legislative history, and it is partially inconsistent with the board reclassification rule. But the Secretary looked to the legislative history, and she also looked to the text of the statute and considered very sound policy reasons for developing the board reclassification rule. And in this situation, to allow legislative history to trump all of that would effectively elevate it to Step 1 status. I'm surprised that you weren't arguing this case more consistently with Judge Mannion's opinion in the district court. I think Judge Mannion relied primarily on the fact that Section 401 did not specifically address the board reclassification process. I thought the district court essentially said that there was a gap because the two statutes intersected and Congress didn't explain how you should deal with the intersection. That's our position, Judge Fischer. There is a gap, and Congress left that gap for the agency to fill. It did not directly speak to what the relationship should be between these two distinct mechanisms. So if there's a gap, you would argue that's an ambiguity. Correct. Okay, and you don't want us at Step 1 to look at legislative history in trying to ascertain what that ambiguity means, correct? Correct. Do you like the Geiser opinion as far as that argument is concerned? In this case, we do, yes. In this case, you do. Okay, and you probably use it the other way in other cases. So that gets you to Step 2, correct? That's correct. Okay, so there's a gap. Now, you're still talking about the gap at Step 2. And the question is whether or not the Secretary's reclassification rule is a reasonable interpretation of what Congress said. How do you support that? I mean, all Congress said is you can pass some guidelines. The Secretary identified two related policy concerns, Your Honor. The first is that stacking these two reclassification mechanisms on top of each other would lead to odd results. These are two distinct mechanisms, and each is designed to provide relief to hospitals that are disadvantaged by their geographic location. The Secretary concluded that it would be anomalous to allow a hospital to effectively say, I'm an urban hospital disadvantaged by my urban location, so I'd like to become rural, and then turn around and say, I'm now disadvantaged by the rural status that I voluntarily acquired, and I would now like an urban region. But isn't that an argument that you should have made to Congress back in 1999 when they were considering Section 401? Your Honor, because Congress did not address the relationship between these two provisions. Are you arguing the absurdity? In other words, it's absurd to think otherwise. No, Your Honor. You're not arguing the absurdity argument here. No, we're in the Chevron framework. What we're talking about is reasonableness. And the Secretary also pointed to another policy concern, which is that this approach would allow hospitals to maintain dual status. They could become rural for some purposes and get many benefits, such as rural referral center status, but then they can effectively pick and choose by then becoming urban for wage index purposes. And this would lead to inappropriate payments. Here, if Geisinger were permitted to get Allentown's wage index, it would still remain rural for other purposes. I mean, conceivably, and we can't figure out necessarily what Congress was looking at when they drafted 401, but you have some geographic regions here that, you know, as someone might look at them on the map, have some overlap. And Geisinger is saying that the wage index in Scranton isn't high enough to allow them to compete to get good employees. And 401 gets them an expansive region in which they can look to and gets them over to Allentown, where if they get that wage index, they get more of a reimbursement. And therefore, with more reimbursement, they should be able to attract more employees to their facility. I mean, couldn't that possibly be Congress's determination as to why they did that? I mean, it's not that big of a stretch under these geographic facts. May I answer? Yeah, you can continue. Your Honor, that is a plausible interpretation of what Congress might have intended here. It is not the only possible reading. And, in fact, there is a board rule that allows hospitals. That's how Geisinger was able to reclassify to East Stroudsburg, by going to the nearest urban location. So all you have to do is show that the Secretary's interpretation was reasonable, not the only one. That's correct, Your Honor. Okay. Well, is it common practice? The briefing makes it clear for a hospital to be reclassified urban under Section D-10, to be reclassified as urban. So why shouldn't Section 401 hospitals be treated any different other than rural hospitals? The Secretary addressed that exact question, Your Honor, and determined that they're in two very different positions because a geographically urban hospital that proceeds through Section 401 has voluntarily acquired that status, effectively saying I've been disadvantaged by my urban location. By contrast, a hospital that is actually located in a rural area has really no other choice but to be rural, and board reclassification gives it some relief. It's reasonable to limit that to hospitals that are truly rural. Okay. All right. Thank you, Your Honor. Ms. Morrissey, thank you very much. Mr. Glazer? Thank you, Your Honor. Just a couple of points. Following up on what Ms. Morrissey just ended with, from a policy standpoint, if we're looking at the reasonableness in Step 2, if we're looking at the reasonableness of the Secretary's interpretation, it appears to me at least that it's a bit strange to allow these two steps, or as I said, hopscotch in the process, on the rural peg to get yourself over to the Allentown wage index. I don't know if strange is the word I would use, but it's a process. I think the answer is that we know that it's a process that Congress approved of. They told us that in the conference report. So whether we find it strange or there's a particular rationalization for it that Congress might have had, we know that it's a process that they wanted this hospital and other hospitals like it to be able to partake in. I want to go to the point about the Secretary's argument that this is somehow an affront to the system and it's somewhat shocking that hospitals would be treated as urban for wage index purposes, but rural for every other purpose. That's actually what I was going to ask you. We've been talking about loopholes, Judge Fischer was. Are you guys exploiting the loophole? Is that the way you'd characterize it? Sure, I wouldn't characterize it that way. I understand that. The answer is we look at a provision that Congress clearly intended to apply to us and we intend to take advantage of it. It sounds like a loophole. I don't know if it's a loophole. I guess my argument would be when we see it in the tax law, a loophole is something that we encourage people to take advantage of because they're entitled to it. To the extent that there's a process. This is sort of like the tax code. A loophole process. Chief Justice Roberts found that there was a lot of similarity between health care law and tax code, right? That's the statutory right. Stand by your guns. Absolutely. But I do think we have that situation where it really isn't unfair. It's how the system operates. Rural hospitals throughout this country, about 200 or 300 of them every year, are treated as rural for every single purpose except for wage amendments purposes, and Congress intended for whatever reason to allow this hospital, and a handful, this is not a ton of hospitals, to be able to go through that same process. All right. You talked about the country. Now you're involved in the case in the Second Circuit. Are there other cases like this around? Not yet, Your Honor. There are not, but there are a handful of hospitals that might be able to do this. This is not something that applies to 1,000 or 2,000 hospitals, but there are a handful of hospitals here and there in this country that can take advantage of it. Whether they choose to or not, I really don't know. But I would note that. Are there any disadvantages? The answer is there are disadvantages to being rural. So some hospitals might not want to be rural. There are some distinctions. For example, there are certain capital related costs that rural hospitals are not as reimbursed as other hospitals. There are things related to value-based purchasing and different things that are outside of it that do apply differently. All right. You had something else you wanted to say there. Correct. I'll finish in 30 seconds. If Congress had said and just focused on Paragraph 10 and said, for purpose of this paragraph, I'm not sure we'd be here. Everybody would say, oh, they meant this paragraph. It's unclear to me why when Congress says, no, no, we really wanted to apply to the whole subsection, not just that paragraph, all of it, when they use that language that we suddenly consider ambiguous and confusing. It's a step I just don't understand why we're logically making.  They really meant it. Thank you, Your Honor. Okay. All right. We thank counsel on both sides for a case that was well-briefed and well-argued, and we'll take the matter under advisement.